# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: <br><br> UNIVERSAL MARKETING, INC., *et al.*,[1] <br><br> Debtors. | Chapter 7 <br> (Previous Chapter 11) <br><br> Case No. 09-15404 (ELF) <br> (Substantively Consolidated) |
| CHARLES R. GOLDSTEIN, Chapter 7 Trustee for the Estate of UNIVERSAL MARKETING, INC., *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> RAJA & PAWAN LLC d/b/a SPEED GAS, <br><br> Defendant. | Adversary No. |

## COMPLAINT TO AVOID AND RECOVER
## PREFERENTIAL AND FRAUDULENT TRANSFERS

Plaintiff, Charles R. Goldstein, Chapter 7 Trustee ("Trustee" or "Plaintiff") for the substantively Consolidated Estate (as defined herein) of the above captioned debtors ("Debtors"), by and through his undersigned attorneys, by way of Complaint (this "Complaint") against RAJA & PAWAN LLC d/b/a SPEED GAS, the above-captioned defendant ("Defendant"), and respectfully alleges as follows:

---

[1] The Debtors in this substantively consolidated proceeding are the following entities: Universal Marketing, Inc.; Universal Delaware, Inc.; Universal Enterprises, Inc.; Universal Management, Inc.; Universal Distribution Inc.; Project Growth Technologies, Inc.; Universal Real Estate, Inc.; 177 Old Camden Road, LLC; 1272 South Governors Ave, LLC; 133 Saulsbury Road, LLC; 1104 South State Street, LLC; 100 S. Main Street, LLC; 505 Bridgeville Highway, LLC; 323 West Stein Highway, LLC; 111 South West Street, LLC; 102 West Central Avenue, LLC; 302 Maple Avenue, LLC; 176 Flatlands Road, LLC; 5318 Snow Hill Road, LLC; 617 North Salisbury Boulevard, LLC; 28768 Ocean Gateway Highway, LLC; 241 Cypress Street, LLC; 610 Snow Hill Road, LLC; 106 Cedar Street, LLC; 326 East Dover Street, LLC; 101 Maple Avenue, LLC; and 2194 Reading Road, LP.

## JURISDICTION AND VENUE

1. This adversary proceeding is commenced pursuant to Rules 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Sections 502(d), 544, 547, 548, 549, and/or 550 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This adversary proceeding is a "core" proceeding to be heard and determined by the Bankruptcy Court pursuant to 28 U.S.C. § 157(b)(2)(B), (E), (F), (H), and (O).

3. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

4. Plaintiff is the duly appointed Chapter 7 Trustee of the Estate. The Trustee has standing and all due authority to bring the claims contained herein on behalf of the Estate by operation of, *inter alia*, 11 U.S.C. §§ 105, 323, 544, 547, 548, 549, and 550, as well as the Substantive Consolidation Orders (as defined herein).

5. Upon information and belief, Defendant, RAJA & PAWAN LLC d/b/a SPEED GAS, is a New Jersey limited liability company maintaining an address at 50 Haddon Avenue, Westmont, New Jersey, 08108, and has a registered agent, Sukhjinder Singh, at 62 Dunhill Drive, Voorhees, New Jersey 08043.

6. Defendant transacted business with the Debtors prior to the Petition Date (as defined herein) and prior to the Petition Date was a creditor of the Debtors.

7. Specifically, upon information and belief, Defendant is a wholesale or retail distributor of petroleum and petroleum related products ("Product") which purchased certain Product from the Debtors, and, upon information and belief, may have also sold certain Product to the Debtors.

8. Further, upon information and belief, in the course of dealing between the Debtors and the Defendant, the Defendant alleged certain indebtedness due by the Debtors to Defendant on account of the parties' business dealings.

## RELEVANT PROCEDURAL BACKGROUND

9. On July 23, 2009 (the "Petition Date"), Universal Marketing, Inc. ("UMI") filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"), Case No. 09-15404-ELF.  UMI remained in possession of its assets and continued in the management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, until the Bankruptcy Case was converted.

10. By Order dated August 18, 2009 (the "Conversion Date"), the Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code, and Terry P. Dershaw was appointed as interim Chapter 7 Trustee.

11. On September 23, 2009, creditors voted to elect Charles R. Goldstein as the permanent Trustee in this Chapter 7 proceeding under 11 U.S.C. § 702.  On October 7, 2009, the Court entered Orders approving the retention of (i) Protiviti Inc. ("Protiviti") as financial advisors to the Trustee; and (ii) Archer & Greiner, P.C. ("A&G") as attorneys for the Trustee.

12. On April 19, 2010, the Trustee filed a Motion to Approve Settlement Agreement and for Substantive Consolidation With and Extension of Proceedings to Non-Debtor Entities (the "Settlement and Consolidation Motion") seeking (i) approval of a certain negotiated settlement arrangement reached by and among the Trustee, UMI's Affiliates, and certain other entities and persons, pursuant to Bankruptcy Rule 9019 (the "Affiliate Settlement Agreement"); and (ii) the substantive consolidation of, and extension of bankruptcy proceedings over certain non-debtor entities, including, but not limited to, Universal Delaware, Inc. ("UDI").

3

13. On June 16, 2010, the Trustee filed a Motion to Approve Compromise Under Fed. R. Bankr. P. 9019 with TD Bank, N.A. (the "TD Settlement Motion"), seeking approval of the terms of a settlement agreement entered into by and between the Trustee and TD Bank, N.A., pursuant to Bankruptcy Rule 9019 (the "TD Settlement Agreement").

14. On August 4, 2010, the Court entered an Order Granting Substantive Consolidation and Approving Affiliate Settlement Agreement and TD Settlement Agreement (the "First Substantive Consolidation Order"). Pursuant to the First Substantive Consolidation Order, subject to the terms and conditions set forth therein, all assets and liabilities of UMI and certain non-debtor entities were consolidated into a single bankruptcy estate *nunc pro tunc* to the Petition Date (the "Consolidated Estate").

15. On October 27, 2010, the Court entered an Order Granting Motion of Chapter 7 Trustee for Order (I) Granting Substantive Consolidation with and Extension of Proceedings to a Certain Affiliate and Non-Debtor Real Estate Entities; (II) Setting (A) Date to Conduct Auction of Real Property Owned by Non-Debtor Real Property Entities, and (B) Hearing Date for Approval of Auction; (III) Approving Bidding Procedures; (IV) Approving and Authorizing Sale of Real Property Owned by Non-Debtor Real Estate Entities to Highest or Best Bidder Free and Clear of all Liens, Interests, Claims and Encumbrances Pursuant to Sections 105 and 363 of the Bankruptcy Code; (V) Waiving the Requirements of Federal Rule of Bankruptcy Procedure 6004(h), and (VI) Granting Related Relief (the "Second Consolidation Order") which, *inter alia*, approved the substantive consolidation of and extension of bankruptcy proceedings to certain additional non-debtor entities with the Consolidated Estate.

**Facts Common to All Counts**

16. Prior to the Petition Date, the Debtors and certain of their affiliates operated approximately thirty-six (36) fuel supply stations and convenience stores across six (6) states in

the Northeast and Mid-Atlantic regions of the United States (collectively, the "Stations"). Some of the Stations were "branded" (as, for example, Gulf, ConocoPhillips, or CITGO stations), while others remained "unbranded" (and operated only under the "Universal" name). The Debtors and their affiliates also maintained corporate office space at 4 King Avenue, New Castle, Delaware, which served as the operational headquarters for the Debtors and their affiliates.

17. The operational purpose of UMI was to purchase fuel Product from suppliers, and to sell such fuel Product to other Debtors and affiliated entities within the overall Universal "network," as well as to certain other third parties.

18. The operational purpose of UDI was to act as the "management company" for the Debtors and their affiliated entities. Upon information and belief, UMI transferred large quantities of fuel Product to UDI on a daily basis. Upon further information and belief, UDI interfaced with the Debtors' convenience vendors, purchasing items for the Stations such as snack foods, cigarettes, and other convenience items.

19. Cash needs of the Debtors were met by funding a given entity whenever it needed funds on hand, from whatever source was available – i.e., credit lines, inter-company "loans," or any other source. Money was constantly flowing to and from the various Debtors in the form of inter-company transfers. These inter-company transfers were made on a daily basis between and among the Debtors (and certain of their affiliates), and were effected primarily for the purpose of maintaining liquidity where it was needed in the network of entities at any given point in time.

20. Plaintiff's analysis of the Debtors' books and records reveals that in many cases, the Debtors sold fuel Product – both internally and to third-party retailers – at cost, and in some

5

instances, below cost. This resulted in little or no profit margin for the Debtors, and is an unsustainable business model in virtually any industry.

21. Accordingly, upon information and belief, the Debtors sold Product to the Defendant for less than fair value.

22. Moreover, based on the Plaintiff's review of the Debtors' financial records and third party financial documents, the value of the Debtors' assets at a fair valuation from December 31, 2004 through the Petition Date was less than the Debtors' current and long-term liabilities during the same period. Accordingly, at all times relevant to the causes of action alleged herein, the Debtors were insolvent within the meaning of Section 101(32) of the Bankruptcy Code.

### COUNT I - Avoidance of Fraudulent Transfers
### Pursuant to 11 U.S.C. § 548

23. Plaintiff repeats and reasserts the allegations of the foregoing paragraphs as if set forth fully herein.

24. On or within two (2) years prior to the Petition Date (the "2-Year Period"), the Debtors made one or more transfers to the Defendant in the aggregate amount of $21,439.56 (the "2-Year Transfer(s)"). Attached as Exhibit "A" hereto and incorporated herein by reference is a schedule of the 2-Year Transfers.

25. The 2-Year Transfers were to or for the benefit of the Defendant, which was a creditor of the Debtors at the time of each 2-Year Transfer.

26. The Debtors received less than reasonably equivalent value in exchange for the 2-Year Transfers.

27. Moreover, upon information and belief, the Debtors sold Product to the Defendant for less than fair value.

6

28. Specifically, the Debtors failed to maintain invoices, records, or other supporting documents relating to Defendant which would tend to support that all of the 2-Year Transfers were made in the ordinary operation of the Debtors' businesses and in payment for the fair value of goods and/or services provided by the Defendant to the Debtors.

29. The Defendant is the initial transferee of the 2-Year Transfers or the entity for whose benefit the 2-Year Transfers were made, or the immediate or mediate transferee of the initial transferee receiving such 2-Year Transfers.

30. Upon information and belief, the Debtors were insolvent, became insolvent, or intended or believed that they would incur debts beyond their ability to pay as such debts mature, at the time the 2-Year Transfers were made or as a result of the 2-Year Transfers having been made, and/or were engaged or about to become engaged in a business or transaction for which the property remaining in the Debtors' hands after the conveyance was unreasonably small capital.

31. The 2-Year Transfers were made within two (2) years of the Petition Date.

32. Under Section 548 of the Bankruptcy Code, Plaintiff is entitled to an order and judgment avoiding the 2-Year Transfers.

**COUNT II – Avoidance and Recovery of Fraudulent Transfers
Pursuant to 12 Pa. C.S.A. §§ 5101, *et seq.*; 11 U.S.C. §§ 544 and 550**

33. Plaintiff repeats and reasserts the allegations of the foregoing paragraphs as if set forth fully herein.

34. As set forth above, the Debtors made certain transfers to or for the benefit of Defendant.

35. On or within four (4) years prior to the Petition Date (the "4-Year Period"), the Debtors made one or more transfers to the Defendant in the aggregate amount of $148,551.42

7

(the "4-Year Transfer(s)").  Attached as Exhibit "B" hereto and incorporated herein by reference is a schedule of the 4-Year Transfers.[2]

36. The 4-Year Transfers were made within the time periods prescribed by 12 Pa. C.S.A. § 5109.

37. The 4-Year Transfers constitute transfers of the Debtors' property, or an interest of the Debtors in property.

38. The Defendant is the initial transferee of the 4-Year Transfers or the entity for whose benefit the 4-Year Transfers were made, or the immediate or mediate transferee of the initial transferee receiving such 4-Year Transfers.

39. The 4-Year Transfers were made without the Debtors receiving reasonably equivalent value in exchange for such 4-Year Transfers.

40. Moreover, upon information and belief, the Debtors sold Product to the Defendant for less than fair value.

41. Specifically, the Debtors failed to maintain invoices, records, or other supporting documents relating to Defendant which would tend to support that all of the 4-Year Transfers were made in the ordinary operation of the Debtors' businesses and in payment for the fair value of goods and/or services provided by the Defendant to the Debtors.

42. At the time the 4-Year Transfers were made, the Debtors had one or more creditors.

43. At the time the 4-Year Transfers were made, the Debtors were engaged or were about to engage in business or transactions for which the remaining assets of the Debtors were unreasonably small in relation to the business or transactions.

---

[2] The 4-Year Transfers are inclusive of, and not in addition to, the 2-Year Transfers.

44. At the time the 4-Year Transfers were made, the Debtors intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

45. At the time the 4-Year Transfers were made, the Debtors had unreasonably small capital relative to the sums transferred by the 4-Year Transfers.

46. At the time the 4-Year Transfers were made, the Debtors were insolvent or became insolvent as a result of such 4-Year Transfers.

47. The 4-Year Transfers constitute fraudulent transfers as to the Debtors' creditors, whether such creditors' claims arose before or after the 4-Year Transfers, within the meaning of 12 Pa. C.S.A. §§ 5104 and 5105.

48. The 4-Year Transfers are avoidable pursuant to 11 U.S.C. § 544 and applicable non-bankruptcy law, including 12 Pa. C.S.A. §§ 5101, *et seq.*

49. The Trustee may recover the value of the 4-Year Transfers from Defendant, as the entity for whose benefit the 4-Year Transfers were made, or the immediate or mediate transferee of the initial transferee receiving such 4-Year Transfers, pursuant to 11 U.S.C. § 550 and applicable non-bankruptcy law, including 12 Pa. C.S.A. §§ 5101, *et seq.*

### COUNT III - Recovery of Post-Petition Transfers Pursuant to 11 U.S.C. § 549

50. Plaintiff repeats and reasserts the allegations of the foregoing paragraphs as if set forth fully herein.

51. To the extent that one or more of the Debtors made a transfer to Defendant on account of obligations that arose before the Petition Date and that cleared after the Petition Date, such transfer(s) were unauthorized post-petition transfers (the "Post-Petition Transfers") and are avoidable under 11 U.S.C. § 549.

9

52. Additionally, to the extent that one or more of the Debtors made a transfer to Defendant after the Petition Date, which transfer was not in the ordinary course of business between the Defendant and the Debtors, and which transfers was not authorized by the Bankruptcy Code or by order of the Bankruptcy Court, such transfer(s) constitute Post-Petition Transfers and are avoidable under 11 U.S.C. § 549.

53. Additionally, to the extent that one or more of the Debtors made a transfer to Defendant after the Petition Date, which transfer was in exchange for goods and/or services provided by Defendant to a non-Debtor third-party, and for which the Debtors received no benefit, such transfer(s) constitute Post-Petition Transfers and are avoidable under 11 U.S.C. § 549.

### COUNT IV - Recovery of Preferential and Fraudulent Transfers
### Pursuant to 11 U.S.C. § 550

54. Plaintiff repeats and reasserts the allegations of the foregoing paragraphs as if set forth fully herein.

55. Collectively, the 90-Day Transfers, 2-Year Transfers, 4-Year Transfers, and Post-Petition Transfers may be referred to herein as the "Transfers."

56. The Defendant is the initial transferee of the Transfers or the entity for whose benefit the Transfers were made, or the immediate or mediate transferee of the initial transferee receiving such Transfers.

57. Under Section 550 of the Bankruptcy Code, Plaintiff is entitled to recover the avoided Transfers or the amount of the avoided Transfers from the Defendant.

### COUNT V - Disallowance of Defendant's Claim(s)
### Pursuant to 11 U.S.C. § 502(d) and (j)

58. Plaintiff repeats and reasserts the allegations of the foregoing paragraphs as if set forth fully herein.

59. The Defendant is a transferee of transfers avoidable under Sections 544, 547, 548, and/or 549 of the Bankruptcy Code.

60. As a result of Defendant's receipt of the Transfers as alleged hereinabove and pursuant to Section 502(d) of the Bankruptcy Code, the Court is required to disallow any claim of the Defendant against the Debtors or the Consolidated Estate (the "Claims"), whether asserted in a proof of claim or scheduled on the Debtors' schedules of assets and liabilities, until or unless the Defendant pays to Plaintiff the amount of the Transfers for which the Defendant is liable to the Plaintiff under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code.

61. Pursuant to 11 U.S.C. § 205(j), any and all Claims of Defendant, and/or its assignee, against the Debtors or the Consolidated Estate previously allowed by the Debtors, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of all the Transfers.

### COUNT VI - Attorneys' Fees and Costs

62. Plaintiff repeats and reasserts the allegations of the foregoing paragraphs as if set forth fully herein.

63. By reason of the foregoing, Plaintiff should be awarded its attorneys' fees and costs incurred in bringing and pursuing this action.

### RESERVATION OF RIGHTS

64. Plaintiff's intent through the filing of this Complaint is to recover all transfers made by the Debtors to or for the benefit of the Defendant during the applicable time periods and as such hereby expressly reserves his right to amend this Complaint to seek to recover any additional transfers received by the Defendant or that provided a benefit to the Defendant during the applicable time periods that may be discovered after the filing of this Complaint.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor:

(a) That all Transfers avoidable under 11 U.S.C. §§ 544, 547, 548, and/or 549 in the aggregate amount of $148,551.42 be avoided;

(b) That all Transfers avoidable under 11 U.S.C. §§ 544, 547, 548, and/or 549, be recovered by Plaintiff pursuant to 11 U.S.C. § 550;

(c) Judgment in the aggregate amount of $148,551.42;

(d) Disallowing, in accordance with 11 U.S.C. § 502(d), any Claims held by Defendant and/or its assignee until Defendant satisfies the judgment;

(e) Disallowing, in accordance with 11 U.S.C. § 502(j), any Claims held by Defendant and/or its assignee until Defendant satisfies the judgment;

(f) Awarding pre-judgment interest at the maximum legal rate running from the date of each Transfer to the date of judgment herein;

(g) Awarding post judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

(h) Requiring Defendant to pay forthwith the judgment amount awarded in favor of Plaintiff;

(i) Awarding attorneys' fees and costs of suit to the Plaintiff; and

(j) Granting Plaintiff such other and further relief as the Court deems just and proper.

Date:  July 22, 2011                                ARCHER & GREINER
                                                    A Professional Corporation


                                                    */s/  Stephen M. Packman*                .
                                                    Stephen M. Packman (PA Bar No. 57283)
                                                    Douglas G. Leney (PA Bar No. 206050)
                                                    One Centennial Square
                                                    Haddonfield, NJ  08033
                                                    Tel:  (856) 795-2121
                                                    Fax:  (856) 795-0574
                                                    spackman@archerlaw.com
                                                    *Attorneys for Charles R. Goldstein, Chapter 7
                                                    Trustee for the Consolidated Estate of Universal
                                                    Marketing, Inc., et al.*

6941483v1

13